ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| JOSÉ A. MORALES Y ADITZA MORALES BARAJAS<br>QUERELLANTE(S)-RECURRIDA(S)<br><br>V.<br><br>JOSÉ DAVID TORRES MURPHY H/N/C MURPHY CONSTRUCTION<br>QUERELLADA(S)-RECURRENTE(S) | KLRA202400161 | *REVISIÓN DE DECISIÓN ADMINISTRATIVA*<br>procedente del<br>DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACo)<br><br>Caso Núm.<br>ARE-2022-0004235<br><br>Sobre:<br>Construcción |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 13 de marzo de 2026.

Comparece ante este Tribunal de Apelaciones, el señor JOSÉ DAVID TORRES MURPHY H/N/C MURPHY CONSTRUCTION (señor TORRES MURPHY) mediante *Recurso de Revisión Judicial* incoado el 1 de abril de 2024. En su escrito, nos solicita que revisemos la *Resolución* expedida el 15 de noviembre de 2023 por el DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACo).[1] Mediante la referida decisión, se declaró con lugar la *Querella* y se ordenó al señor TORRES MURPHY a pagar la suma de $19,000.00, con el interés legal acumulado hasta la fecha del pago total, a favor del señor JOSÉ A. MORALES Y ADITZA MORALES BARAJAS (señores MORALES-MORALES).

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Este dictamen administrativo fue notificado y archivado en autos el 15 de noviembre de 2023. Apéndice de *Recurso de Revisión Judicial,* págs. 57-65.

Número Identificador: SEN2026_____

- I -

El 26 de octubre de 2022, los señores **MORALES-MORALES** instaron una *Querella* en contra del señor **TORRES MURPHY** ante el **DACo**.[2] Arguyeron que, allá en o para el mes de junio del año 2022, suscribieron un contrato de construcción con el señor **TORRES MURPHY**. Ello para terminar una obra de construcción en una vivienda ubicada en Quebradillas, Puerto Rico. Enunciaron que terminaron el contrato debido a un sinnúmero de trabajos incompletos o mal realizados. Entre ellos, la montura de puertas y ventanas estaba mal hecho; la labor de electricidad es deficiente e incompleto; y algunas paredes y/o cuartos fueron construidos incorrectamente. Por ello, requirieron una compensación económica de $62,692.87.

Ante esta situación, el 4 de noviembre de 2022, **DACo** formuló una *Notificación de Citación de Inspección* en la cual pautó el examen para el 23 de noviembre de 2022 a la 10:00 de la mañana en la residencia de los señores **MORALES-MORALES**.[3] Mas adelante, el 6 de diciembre de 2023, el foro *a quo*, decidió su *Informe de Inspección Construcción* (*Informe*).[4] En dicho *Informe*, el inspector Edwin Rodríguez López consignó lo siguiente:

> Los trabajos de construcción no están finalizados. El querellante no quiere que el querellado termine los trabajos.
> 1) Las losas del piso y los azulejos de baños y cocina no están terminadas y presentan las siguientes deficiencias:
>     a. Losas rotas o partidas, repartidas en toda la casa.
>     b. Losas descascaradas.
>     c. Falta de lechada en algunas áreas.
> 2) Las losas en la pared del baño no se instalaron como se había pedido, según alega el querellante.
> 3) El piso del área de la bañera tiene un nivel desproporcionado. Ya tiene la losa instalada.
> 4) Las escaleras de la entrada a la casa no se construyeron según las especificaciones del querellante.
> 5) Faltó empañetar los aleros del primer piso.
> 6) La puerta de la entrada a la casa está instalada. Alega el querellante que no quedó bien instalada por el querellado y el querellante tuvo que corregir y reinstalar nuevamente.
> 7) La electricidad está sin terminar y presenta las siguientes deficiencias:
>     a. En la cocina tiene un tubo eléctrico corrugado que quedó superficial a la pared. Se debe cortar el cemento y empotrarlo más adentro.
>     b. Las piezas de receptáculo e interruptor en la pared se ven desnivelados.

---

[2] Número de caso: ARE-2022-0004235. Apéndice de *Recurso de Revisión Judicial*, págs. 1-8.
[3] Apéndice de *Recurso de Revisión Judicial*, págs. 9-11.
[4] *Íd.,* págs. 12-16.

    c. Alega el querellante, que no se le ha entregado la certificación eléctrica.

8) Tiene paredes con desnivel.

9) Las puertas interiores se fabricaron con medidas diferentes a las medidas de los huecos, no caben.

10) En el cuarto tiene unas ventanas instaladas donde no se tomó en cuenta el declive del alero exterior y al abrirla tropieza con el mismo.

11) En los bajos de la casa se construyó una pared donde no se tomó en cuenta la distribución eléctrica quedando esta encima de un tubo de agua.

12) En el pozo muro se desprendió la tubería sanitaria. [...]

**Estimado: El querellante presentara gastos de reparación**.

Después, el 7 de febrero de 2023, el señor TORRES MURPHY presentó su *Contestación a Querella* en la cual, negó todas las alegaciones por no ser ciertas, ni correctas en derecho e incluyendo sus defensas afirmativas.[5] Añadió que los señores MORALES-MORALES no le permitieron terminar la obra; estos le adeudan y encausaron su reclamación con el fin de no pagar el referido pasivo.

El 30 de agosto de 2023, el señor TORRES MURPHY presentó una *Moción en Solicitud de Desestimación por las Alegaciones* en la cual acotó que **DACo** estaba imposibilitado de continuar el procedimiento o actuaría *ultra vires*, toda vez que la construcción era ilegal puesto que no contaba con los permisos correspondientes, los cuales eran responsabilidad del dueño de la obra, los señores MORALES-MORALES.[6]

Luego de varias incidencias procesales, el 13 de septiembre de 2023, **DACo** expidió *Notificación de Vista Administrativa* pautando audiencia para el 9 de noviembre de 2023 a las 10:00 de la mañana.[7] El 19 de septiembre de 2023, el señor TORRES MURPHY presentó *Moción en Solicitud de Recalendarización* toda vez que su representación legal tenía un juicio pautado, se le imposibilitaba asistir y ofreció unas fechas alternas disponibles en su calendario.[8] A lo antes, el 21 de septiembre de 2023, los señores MORALES-MORALES presentaron *Moción en Oposición a "Moción en Solicitud de Recalendarización"* manifestando que ya habían adquirido los pasajes para venir a Puerto Rico, y el señor TORRES MURPHY no presentó evidencia del supuesto señalamiento previo.[9] Ese mismo día, el señor TORRES

---

[5] Apéndice de *Recurso de Revisión Judicial*, págs. 17-20.
[6] *Íd.*, págs. 39-41.
[7] *Íd.*, págs. 42-45.
[8] *Íd.*, pág. 46.
[9] Apéndice de *Recurso de Revisión Judicial*, págs. 47-48.

**MURPHY** presentó *Moción en Réplica a Oposición de Solicitud de Reseñalamiento* acompañada de búsqueda efectuada en la página del Poder Judicial acreditando el señalamiento.[10] El 25 de septiembre de 2023, **DACo** emitió una *Notificación* en la cual no concedió la solicitud de transferencia de fecha de vista.[11]

Insatisfecho con la decisión de **DACo**, el señor **TORRES MURPHY** presentó una *Moción en Reconsideración y Solicitud de Turno Posterior* en la cual justificó que no les fue consultado si la fecha era hábil; tan pronto recibió la notificación presentó su petitorio de recalendarización por el conflicto de calendario; y ello lo ponía en una situación de desventaja innecesaria.[12] Por lo anterior, reiteró su solicitud de transferencia o, en la alternativa, un turno posterior el mismo día de la vista a las 3:00 de la tarde. El 12 de octubre de 2023, los señores **MORALES-MORALES** presentaron *Moción en Oposición a Transferencia de Vista.*[13] **DACo no** se expresó respecto a la solicitación del señor **TORRES MURPHY**.

Finalmente, el 9 de noviembre de 2023, **DACo** celebró la audiencia a la cual comparecieron ambas partes y el señor **MORALES** declaró bajo juramento. El 15 de noviembre de 2023, el foro administrativo pronunció la *Resolución* recurrida y consignó seis (6) determinaciones de hechos:[14]

1. El querellante se dedica al negocio de la construcción y remodelación de casas en otra jurisdicción fuera de Puerto Rico. El querellante es dueño de un inmueble que ubica en la carretera 484, km. 2.20- barrio San José, Quebradillas, P.R. Allá en o para junio del 2022, el querellante contrato de forma atípica [documentos sin fecha de comienzo y terminación] al negocio querellado para que terminara la obra de construcción de una casa de vivienda de su propiedad, que ya había sido comenzada y se encontraba en la etapa de bloques colocados.

2. Como parte de los acuerdos entre el querellante y el negocio querellado; el querellado tenía que hacer en el inmueble: limpiar el piso con maquina a presión- remover la losa que esta hueca- rellenar el espacio que se sacó la loza con pega- aplicar acido a la losa para que se ponga porosa- remover todos los sócalos del cuarto, sala, pasillo, cocina, baño y comedor- instalar la losa en el piso de la entrada, comedor, sala, pasillo, laundry, en las tres habitaciones, balcón del cuarto master- montura de 3 ventanas en la cocina- 4 ventanas en la sala- 4 ventanas en el cuarto master- 1 ventana en el baño master- 1 puerta en la entrada doble- 1 puerta del cuarto master doble- 6 puertas interiores- construir 3 paredes en la planta baja y empañetar- empañetar el plafón completo- empañetar todas las

---

[10] *Íd.*, págs. 49-51.
[11] *Íd.*, pág. 52.
[12] *Íd.*, págs. 53-54.
[13] *Íd.*, págs. 55-56.
[14] Esta *Resolución* no hace un desglose de cuál es o en que consiste la prueba documental presentada por las partes.

columnas- romper pared para hacer hueco de puerta- pared de bloque para dividir laundry- cerrar área donde estaba puerta con varillas y bloques- y empañetar ambas partes- empañetar la pared grande que queda de frente- empañetar ambos lados de la pared que divide el laundry- hacer piso de hormigón- trabajo de electricidad- romper pared del baño y añadir outlet- romper pared de cocina y añadir outlet- pasillo romper pared y llevar power al receptáculo- baño añadir outlet romper pared y piso alambrado- receptáculos y rocetas- montar panel eléctrico nuevo interior- base eléctrica de 100 amperes- permiso de uso- trabajo de plomería- romper el baño cuarto master hacer la tubería nueva para la ducha- romper para colocar el tubo de desagüe de lavamanos- hacer la plomería nueva del lavamanos del cuarto master- romper la pared y rodar la plomería de una pared a otra- romper el piso para rodar el desagüe de la ducha del baño de visita- romper la pared del baño visita para colocar plomería nueva del lavamanos e inodoro- levantar el desagüe del inodoro que está en el piso- conectar la plomería que va a la primera planta- conectar la plomería que va al contador- conectar la plomería del inodoro que va al pozo- romper la escalera del frente y hacerla nueva- romper la terraza del frente en la cocina cerrar con bloques y dejarla lista con empañete interior y exterior- hacer una columna con varillas y cemento y empañetar interior y exterior- empañetar la parte de abajo del cuarto donde va la ventana- cerrar la pared completa del baño y dejarle un hueco a la ventana y empañetar interior y exterior- hacer la división del baño criollo- tirar el topin del piso del baño nivelar con el piso del baño master- el cuarto master cerrar con bloques y varillas empañetar interior y exterior.

3. El día 26 de octubre de 2022, el querellante radicó una querella contra el negocio querellado en esta agencia administrativa y alegó en síntesis: terminar el contrato con el negocio querellado por trabajos incompletos y mal hechos- la escalera fue construida incorrectamente- la pared del cuatro master mal construida- losetas mal instaladas- el cuarto de abajo mal construido- todo lo relacionado a montura de puertas y ventanas está mal- el trabajo de electricidad mal hecho e incompleto- lavado a presión incompleto- empañete mal hecho- pozo séptico no se verificó el vacío. Como remedio el querellante solicitó el pago de $62,692.87. El día 7 de febrero de 2023, el negocio querellado sometió a la consideración de esta agencia su contestación a la querella.

4. El 23 de noviembre del 2022, un inspector de esta agencia realizó una visita de inspección en la dirección física del inmueble objeto de querella. El día 6 de diciembre del 2022 se envió copia del informe de inspección de esta agencia al querellante y al negocio querellado a las direcciones en expediente. El día 27 de diciembre de 2022, el querellante sometió a la consideración de esta agencia un documento cuestionando el contenido del informe de inspección de esta agencia.

5. A la fecha de vista administrativa, el querellante había mitigado por cuenta propia o contratando a terceros partes de lo alegado en querella- corrigió lo relacionado al sistema eléctrico- plomería y pozo séptico- los baños fueron reconstruidos- cambiaron las llaves porque tenían cemento- reconstruyeron las puertas y ventanas. Por lo anterior tuvo que incurrir en gastos de compra de materiales de construcción.

6. Como agencia administrativa especializada, se establece que al querellante le asiste el derecho a una compensación económica de $19,000.00- por concepto de gastos de materiales de construcción, costo de mano de obra y certificaciones relacionadas a la mitigación o corrección [conforme a su satisfacción] de la obra de construcción objeto de la querella de título.

Solventó que el señor **MORALES** cumplió su obligación de pagar el precio del contrato según la evidencia documental que obra en el expediente; y el *Informe de Inspección Construcción* refleja que la obra de construcción tenía deficiencias no saneadas, así como falta de terminaciones a la fecha de la inspección.

En desacuerdo, el 5 de diciembre de 2023, el señor **TORRES MURPHY**, presentó una *Moción en Reconsideración*.[15] Infirió que el foro *a quo* actuó con pasión, prejuicio y parcialidad al declarar con lugar la *Querella*. En específico, el día de la vista administrativa, **DACo** comenzó la audiencia sin la comparecencia de la representación legal del señor **TORRES MURPHY**, aun cuando envió a un compañero para informar que estaban de camino. Agregó que el señor **MORALES** no presentó prueba pericial, física o documental que sustentara algún valor con relación al costo de las reparaciones. Aclaró que el oficial examinador en ocasiones detuvo la grabación de la audiencia para tratar de forzar un acuerdo entre las partes, lo que consideró fuera de lugar. El 15 de diciembre de 2023, el señor **MORALES** presentó su *Moción Informativa y Oposición "Moción de Reconsideración"*.[16] Explicó que mediante prueba testifical y documental se estableció el costo de las reparaciones a los daños ocasionados. Así las cosas, el 29 de febrero de 2024, **DACo** decretó la *Resolución en Reconsideración* declarando no ha lugar esta súplica; y apercibiendo que permanece en pleno vigor y efecto la totalidad de la *Resolución* formulada el 15 de noviembre de 2023.[17]

Aun inconforme con esta determinación del **DACo**, el 1 de abril de 2024, el señor **TORRES MURPHY** recurrió ante nos mediante *Recurso de Revisión Judicial* señalando el(los) siguiente(s) error(es):

> Erró el Departamento (DACO) al declarar no ha lugar la Moción de Reconsideración y así mantener el dictamen de ha lugar en la Querella presentada luego de haber incurrido en pasión, prejuicio, y parcialidad al declarar ha lugar la Querella sin un informe pericial que justifique la cantidad ordenada a pagar.

> Erró el Departamento (DACO) al declarar no ha lugar la Moción de Reconsideración y así mantener el dictamen de ha lugar en la Querella presentada sin prueba [pericial] ni referencia al expediente violando así el debido proceso de ley.

---

[15] Apéndice de *Recurso de Revisión Judicial*, págs. 66-69.
[16] *Íd.*, págs. 70-71.
[17] Notificada y archivada en autos el mismo día. Apéndice de *Recurso de Revisión Judicial*, págs. 72-77.

El 5 de abril de 2024, intimamos *Resolución* concediendo un plazo de treinta (30) días a los señores **MORALES-MORALES** para presentar su alegato en oposición al recurso y reglamentando los procedimientos sobre la transcripción de la prueba oral (TPO). En cumplimiento, el 6 de mayo de 2024, los señores **MORALES-MORALES** presentaron su *Alegato en Oposición a Recurso de Revisión Judicial.*

El día 15 de julio de 2024, por entender que la *Resolución* carecía de fundamentos para ejercer nuestra jurisdicción, se le requirió al **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)** que elevara una *Resolución* debidamente fundamentada para la compensación económica de $19,000.00 a favor de los señores **MORALES-MORALES.** El 8 de agosto de 2024, el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)** presentó su *Moción en Cumplimiento de Orden* acompañada de *Resolución.*[18]

Evaluado concienzudamente el expediente del caso, habiéndole dado la debida consideración a la transcripción de la prueba oral (TPO) y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II –

- A - **REVISIÓN JUDICIAL**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de

---

[18] En su *Resolución*, incluyó estas determinaciones de hechos: [...] 3. El día 26 de octubre de 2022, el querellante radicó una querella contra el negocio querellado en esta agencia administrativa y alegó en síntesis *un incumplimiento de contrato de construcción y que lo que se había construido tenía deficiencias graves. Con referencia a requerir el terminar el contrato con el negocio querellado por trabajos incompletos y mal hechos- la escalera fue construida incorrectamente- la pared del cuarto master mal construida- losetas mal instaladas- el cuarto de abajo mal construido- todo lo relacionado a montura de puertas y ventanas está mal- el trabajo de electricidad mal hecho e incompleto-lavado a presión incompleto- empañete mal hecho- pozo séptico no se verificó el vacío.* [...] 5. El 23 de noviembre del 2022, un inspector de esta agencia realizó una visita de inspección en la dirección física del inmueble objeto de querella. *A esa fecha las relaciones entre el querellante y el querellado estaban rotas. El informe de inspección de esta agencia verifica los incumplimiento y deficiencias de construcción.* [...]. 6. A la fecha de vista administrativa, el querellante había mitigado *con mano de obra y dinero propio* o contratando a terceros parte *de los defectos de construcción e incumplimiento alegados en querella*. Corrigió lo relacionado al sistema eléctrico- plomería y pozo séptico- los baños fueron reconstruidos- cambiaron las llaves porque tenían cemento *en el interior y superficie-* reconstruyeron las puertas y ventanas. Por lo anterior tuvo que incurrir en gastos de compra de materiales de construcción *de más de $4,000.* 7. Como agencia administrativa especializada, se establece que al querellante le asiste el derecho a una compensación económica de $19,000.00- por concepto de gastos *en* materiales de construcción, costo de mano de obra *de construcción que valoramos en $15,000.* Certificaciones relacionadas a la mitigación o corrección [conforme a su satisfacción] de la obra de construcción objeto de la querella de título.

adjudicación y reglamentación en la administración pública.[19] Su sección 4.1 instituye la *revisión judicial* por este Tribunal de Apelaciones de las determinaciones finales de las agencias.[20]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[21] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la razonabilidad de la actuación de la agencia.[22] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[23]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[24] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[25] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[26]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[27] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o

---

[19] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).

[20] 3 LPRA § 9671.

[21] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004). Véase, además Javier A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ediciones Situm (2017), págs. 304 – 306.

[22] *Fonte Elizondo v. F & R Const.*, 196 DPR 353 (2016); *Otero v. Toyota*, 163 DPR 716 (2005). D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Bogotá, Ed. Forum, 2001, pág. 543.

[23] *Pérez López v. Depto. Corrección*, 208 DPR 656, 660 (2022).

[24] *Transporte Sonnell, LLC v. Junta de Subastas*, 2024 TSPR 82; 214 DPR ____; *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).

[25] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).

[26] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).

[27] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016).

reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[28]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[29] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[30] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[31] Es decir, estas determinaciones serán respetadas mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas.[32] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[33] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial,* con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[34] Aun

---

[28] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud,* 210 DPR 79 (2022).
[29] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).
[30] *Otero v. Toyota, supra,* pág. 728.
[31] *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 128 (2019).
[32] *Graciani Rodríguez v. Garaje Isla Verde, supra,* pág. 128.
[33] *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 244 (2007).
[34] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).

cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[35]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[36] Así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello, que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[37]

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[38] A *contrario sensu*, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[39] Del mismo modo, el Prof. Echevarría Vargas ha puntualizado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[40]

### - B - DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)

La *Ley Orgánica del Departamento de Asuntos del Consumidor* creó al **DACo** como la agencia administrativa encargada de proteger y salvaguardar los derechos del consumidor.[41] Por consiguiente, se implantó una estructura de adjudicación administrativa con plenos poderes para resolver las controversias ante su consideración y concesión de los remedios pertinentes conforme a derecho.[42] De este modo, la Asamblea Legislativa le adjudicó la responsabilidad de velar por el cumplimiento de todas las leyes relacionadas con los derechos de los consumidores.[43]

---

[35] *Id*.

[36] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

[37] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).

[38] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 893.

[39] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177 (2009).

[40] Echevarría Vargas, J. A., *Derecho Administrativo Puertorriqueño,* 5ta. ed. Rev., San Juan, Ed. Situm, 2023, pág. 340.

[41] Ley Núm. 5 del 23 de abril de 1973, según enmendada. 3 LPRA sec. 341b *et seq.*

[42] 3 LPRA sec. 342 e(d); *Ortiz Rolón v. Armando Soler Auto Sales, Inc.*, 202 DPR 689, 696 (2019).

[43] *Íd.*

Como parte del cumplimiento con su misión, se le facultó al secretario del **DACo** la difusión del *Reglamento de Procedimientos Adjudicativos*.[44] Su propósito principal es "asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el Departamento para proveer un procedimiento uniforme para su adjudicación".[45] Así pues, el referido *Reglamento* agrupa las reglas que aplican a las investigaciones y a los procedimientos administrativos sobre las querellas presentadas por los consumidores o iniciadas por el **DACo**.[46]

- III -

El señor **TORRES MURPHY** argumenta, en esencia, que **DACo** incurrió en pasión, prejuicio y parcialidad al declarar ha lugar la *Querella* sin un informe pericial que justifique la cantidad ordenada a pagar; y al declarar no ha lugar la *Moción de Reconsideración* y así mantener su *Resolución* sin prueba [pericial] ni referencia al expediente violando así el debido proceso de ley. Alude que el *Informe de Inspección Construcción* preparado por el inspector de **DACo no** cumplió con el Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034 de 14 de julio de 2011 (*Reglamento Núm. 8034*), específicamente con la Regla 14.4, al no proveer el estimado de costos detallado de las reparaciones. Asimismo, aduce que **DACo** agendó la audiencia sin tomar en consideración los calendarios de las representaciones legales, y denegó las suspensiones y/o recalendarizaciones.

En cambio, los señores **MORALES-MORALES** manifiestan que **DACo** tuvo la oportunidad de inspeccionar la propiedad mediante una visita de su técnico de investigación. Expusieron que el *Informe* detalla numerosas deficiencias encontradas en la propiedad, y este no fue impugnado oportuna ni eficazmente por ninguna de las partes, por lo que el Reglamento Núm. 8034 dispone que se considera estipulado, relevando de la presencia del técnico de investigación a la vista administrativa. Aseveran que **DACo** escuchó su testimonio y examinó la documentación que respaldaba sus alegaciones, así como la evidencia del cumplimiento de los pagos realizados al señor **TORRES MURPHY**, junto a la prueba

---

[44] *Reglamento de Procedimientos Adjudicativos*, Reglamento Núm. 8034, Departamento de Estado, 13 de junio de 2011.
[45] *Reglamento de Procedimientos Adjudicativos*, *supra*, pág. 1.
[46] *Reglamento de Procedimientos Adjudicativos* (Regla 3), *supra*, pág. 1.

documental de las facturas de materiales comprados. Puntualizan que el señor **TORRES MURPHY** incumplió las obligaciones pactadas entre las partes, realizando de manera deficiente aquellas que pudo completar parcialmente.

Al mismo tiempo, la *Resolución en Reconsideración* articula que el señor **TORRES MURPHY** no testificó a su favor y guardó silencio durante la audiencia. En consecuencia, todas las alegaciones de los señores **MORALES-MORALES,** refrendadas mediante el testimonio oral del señor **MORALES** y la prueba documental, así como los hallazgos del *Informe* sobre los defectos de construcción no fueron rebatidos. Incluyendo haber mitigado con mano de obra y dinero propio algunos de los desperfectos incurriendo en gastos de compra de materiales de construcción. Por ende, se confirmaron las deficiencias en la edificación y se denegó la reconsideración.

Justipreciada la transcripción de la prueba oral vertida durante la audiencia celebrada el 9 de noviembre de 2023, apunta que el testimonio del señor **MORALES** consistió en describir su relación contractual con el señor **TORRES MURPHY**, así como los distintos contratos suscritos y firmados. Igualmente, mencionó las obras realizadas para mitigar, como consecuencia del alegado incumplimiento por parte del señor **TORRES MURPHY**. Hizo alusión a todos los pagos que fueron emitidos a favor del señor **TORRES MURPHY** por concepto de los contratos. A pesar de, notamos que el propio señor **MORALES** declaró que, para efectos de las cantidades solicitadas en la *Querella*, no presentó prueba pericial alguna que sustentara las cuantías especificadas o el valor del trabajo realizado, según expuesto en su reclamación. Para ello, hacemos alusión a parte de su testimonio relevante a la controversia de este caso. Veamos.

P[47]   ¿Cuánto le costó?
R       Lo hice yo.
P       ¿O sea, que usted no tiene un perito que diga cuanto eso le costó?
R       ¿Un perito?
P       Un perito.
R       ¿Qué es un... que significa?
P       Un especialista.
R       ¿Un especialista de qué?
P       En construcción, que no sea usted.
R       El mismo especialista que le dijo a él cómo hacerlo.

---

[47] Transcripción de la Prueba Oral (TPO), págs. 40-41.

P        ¿Qué si usted tiene un estimado de cuánto costó arreglar eso, caballero?

R        **Eh, esa ventana no, porque esa ventana la arreglé yo**.

[...][48]

P        Le pregunto, ¿si es cierto o no es cierto que el señor José le enviaba estas fotos a usted? ¿Verdad que si? ¿Vuestro honor, si me permite... Ok. Este, mire... Mire... usted a la vista de hoy, que es la vista de juicio, por decirlo de esa manera, ¿verdad?, es un juicio que se está viendo en el día de hoy, **¿usted trajo algún perito que dijera cuánto vale reparar lo que usted no quedó satisfecho?**

R        **No señor.**

P        **¿Verdad que no?**

R        **No.**

P        **¿No lo trajo?**

R        **No**.

P        **¿Usted tiene alguna certificación de un perito en plomería o electricidad o ambas que establezca cuánto costaba reparar lo que supuestamente usted no quedó satisfecho?**

R        **No señor.**

[...][49]

P        ¿Mire, de la reclamación que usted hace de sesenta y dos mil dólares ($62,000.00), ese fue el monto total que usted gastó? ¿Verdad que sí? ¿De los gastos de usted?

R        No, de lo que yo pensaba de, de lo que se iba a gastar de nuevo para arreglar los daños que él hizo.

P        **¿Usted tiene algún estimado de eso, por un profesional?**

R        **No.**

P        ¿O sea, que usted lo estimó, así como usted quiso?

R        Lo estimé por lo que él me cobró a mí.

[...][50]

P        ¿Usted trajo estimados de eso, de la ferretería?

R        En los materiales que he comprado ya están...

P        **¿Usted trajo un estimado de un, de un contratista? No de un perito, ¿de un contratista?**

R        **No**.

(Énfasis nuestro).

Debemos colegir que el importe impuesto por **DACo** a favor del señor

**Morales** es irrazonable, toda vez que no se ha apuntalado como se precisó que la

cantidad de $19,000.00 era la correspondiente a otorgarse como compensación

económica. El *Informe de Inspección Construcción* contenía la siguiente expresión:

**Estimado: El querellante presentara gastos de reparación.** Lo cual implica

que el inspector no realizó una valoración del costo de las reparaciones para

corregir las deficiencias de los trabajos o los que estaban incompletos. **Por tanto,**

**el señor Morales debió presentar un estimado de gastos**. No surge de su

testimonio que haya presentado estimado alguno. Más aún, la misma agencia

indica en su *Resolución,* requerida al amparo de la Regla 83.1 de nuestro

---

[48] Transcripción de la Prueba Oral (TPO), pág. 46.

[49] Véase Apéndice, TPO, págs. 53-54.

[50] Véase Apéndice, TPO, pág. 54.

Reglamento, que: "tuvo que incurrir en gastos de compras de materiales de construcción de mas de $4,000" y "valoramos en $15,000". Denotamos que la decisión administrativa **no** está sustentada y/o avalada por *evidencia sustancial* que surja de su expediente que demuestre el cómputo realizado para disipar la cifra adjudicada.

Ante ello, procede que **DACo** evalúe la concesión de la compensación económica impuesta, conforme a la prueba desfilada en la audiencia administrativa y realice los cálculos haciendo referencia a la evidencia utilizada para su discernimiento.

- **IV** -

Por los fundamentos antes expuestos, ***revocamos*** la *Resolución* promulgada 15 de noviembre de 2023 por el DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO) en lo concerniente a la **compensación económica** conferida a los señores MORALES-MORALES. En su consecuencia, se devuelve el caso ante DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO) para que valore y fundamente su cómputo, conforme a lo aquí dispuesto.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Juez Lebrón Nieves concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones